**BATES TRUCK LINE, INC., Plaintiff,**

**v.**

**CAMPBELL SIXTY–SIX EXPRESS, INC., Defendant.**

**Civ. A. No. 75–H–888.**

United States District Court,
S. D. Texas,
Houston Division.

Oct. 28, 1977.

Donald L. Martin, Houston, Tex., for plaintiff.

Phillip Robinson, Paul Angenend, Austin, Tex., Gerald Pate, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SINGLETON, District Judge.

The above-styled-and-numbered cause having been tried before the court without a jury, at the close of the evidence and after hearing arguments of counsel, this court adopts the following memorandum of opinion as its findings of fact and conclusions of law.

From April, 1972, through June 1, 1974, Bates Truck Line, Inc. and Campbell Sixty-Six Express, Inc. operated as motor carriers for hire in the state of Texas, and operated under Certificates of Authority and Permits, and were therefore regulated by the

Interstate Commerce Act, 49 U.S.C. §§ 1–81, and § 301 *et seq.*, and the rules and regulations promulgated thereunder. Both Bates and Campbell were likewise regulated by articles 882 through 911b and article 6701c–1, Revised Civil Statutes of the State of Texas.

During the same period of time, Leo Wells was the owner of certain trucks, all of which were registered in the name of Floyd A. Hawkins for financing, credit, and other reasons, such trucks being described as follows: one 1966 White Freightliner, Motor No. AL24482; one 1965 Peterbilt, Motor No. 19112; and one 1970 White Freightliner, Motor No. CA213HL046852. Neither Wells nor Hawkins were certified carriers and, in order to legally operate their equipment, would have to lease their equipment to a certified motor carrier such as Bates or Campbell.

Throughout the time in question, the Wells equipment was leased by Hawkins to Bates. As lessee, Bates had complete and exclusive possession and control of, as well as responsibility for, these trucks, just as if Bates were the actual owner. 49 U.S.C. § 304(e), 49 C.F.R. § 1057.4. As such, Bates was required to carry and did carry liability insurance on this equipment, and would have been liable to third parties had there been an accident involving this equipment.

During this time period, Campbell and Bates had no agreement of any kind that obligated Campbell to use Bates's equipment in hauling its trailers. Rather, Campbell was free to use any motor equipment it chose, either belonging to Campbell by direct ownership or under a lease agreement with a noncertified owner-operator, or Campbell could have contracted with another certified motor carrier such as Bates for these services. Campbell, in fact, did request Bates to haul its trailers on five separate occasions during the time in question. For these services, Bates billed Campbell and Campbell paid Bates in the usual manner.

Floyd A. Hawkins at this time was both the lessor of the Wells equipment leased to Bates and the general manager of Bates. As general manager, his duties and authority included the leasing of owner-operated trucks or power units needed by Bates to augment its own equipment. In testimony before this court, Mr. Hawkins and Roy Peoples, general manager of Campbell at the time, testified that Mr. Hawkins told Mr. Peoples he would cancel his lease with Bates on the Wells trucks so that Campbell could then use the equipment. Such cancellation was never effected through filing with the Texas Department of Public Safety as required under article 6701c–1 of V.A. C.T.S.

Campbell then proceeded to enter into an agreement with Leo Wells whereby Wells, using the same equipment still effectively under lease to Bates, transported Campbell's trailers between Houston and Dallas. Campbell was billed by Wells and paid Wells for his services. Bates was unaware of the oral communication of cancellation by Hawkins to Peoples and was unaware that Wells was hauling for Campbell, using the same equipment.

Bates is claiming the right to recover damages in the amount it would have charged Campbell for hauling Campbell's trailers with the leased Wells equipment. Bates's right of recovery against Campbell is based on 49 U.S.C. § 8, which reads as follows:

> In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case.

Under the agreement between Campbell and Wells, Campbell paid Wells $56,809 for

freight hauled for Campbell. Bates would have charged Campbell $96,517.02 for the same services. Under the terms of Bates's lease with Wells, Wells would have received 60 percent of that amount and Bates 40 percent. Bates also claims that its equipment, other than Wells's power units, was also used by Wells for hauling Campbell loads and that Bates should recover for the use of that equipment as well, making the total actual damages $113,831.17. In addition, Bates seeks $200,000 in exemplary and/or punitive damages under the theory that Campbell knowingly and intentionally conspired with Wells and Hawkins to violate the law in order to get a lower rate from Wells than that which would have been charged by Bates.

It is Bates's contention that Campbell violated the ICC and Texas Department of Public Safety rules and regulations by employing Wells's drivers and equipment when it was under lease to Bates; that Campbell was a "common carrier subject to the provisions" of 49 U.S.C. §§ 1–81 and § 301 *et seq.* who has done a prohibited act and is therefore "liable to the person or persons injured thereby," namely, Bates. 49 U.S.C. § 8.

Campbell does not even address the question of its liability to Bates under the above statute. Rather, it rests its defense on common-law theories of contract and agency. Campbell would have this court hold that since there was no actual, implied, or quasi-contract between Campbell and Bates, except for those five acknowledged and paid-for hauls, Campbell is not liable for any charges to Bates resulting from Campbell's use of Bates-leased equipment. Campbell argues that it relied on Bates's own agent, Hawkins, to fulfill the filing requirements to cancel the lease of Wells's equipment. Since neither Wells nor Hawkins was a certified carrier, the equipment in question had to be leased to a certified carrier in order to be lawfully operating as a motor carrier.

If Campbell believed the Bates-Hawkins/Wells lease to be canceled, it had to have filed its own lease with the Texas Department of Public Safety. Had it done so under this circumstance, it would have been informed by the Department that its lease was unacceptable since the same equipment was still under lease to Bates. In that case, Campbell would have known it was using the Bates equipment and that it owed Bates for the hauling done with the Wells equipment.

The evidence showed there was no lease on file with the Department of Public Safety between Campbell and Wells. Had Campbell relied on Hawkins's cancellation of the lease and not even attempted to file a new lease, then it would also be in violation of the law since Wells's equipment could not run without such a lease. By omitting to file its own lease of the Wells equipment, Campbell also remained in ignorance of the Bates-Hawkins/Wells lease.

Thus it is clear to this court that Campbell's reliance on Hawkins's canceling the lease could not have absolved it from its own responsibility under the law. By Campbell's own admission, it failed to follow the rules and regulations governing the operation of motor carriers in Texas by failing to file its own lease. As a consequence of Campbell's own omission to act, it failed to discover that Bates's lease was still in effect. Had Campbell followed the regulations, as it was required to do regardless of Hawkins's assurances, it would have known it was using Bates's equipment. Since Campbell's own violations caused it to be ignorant of the continued existence of the Bates lease, it cannot now claim reliance on Bates's agent as a defense.

After careful consideration of these facts, Campbell's liability to Bates comes down to the following question: Under the facts and circumstances of this case is Campbell's violation of Interstate Commerce Commission and Texas Department of Public Safety rules and regulations sufficient to create liability on the part of Campbell to Bates? Section 8 of 49 U.S.C. clearly states that a common carrier who by act or omission commits a violation and causes injury shall be liable for the full amount of that injury.

Neither this court nor counsel for either party has found a case on point where one

motor carrier has sued another under these circumstances. The vast majority of cases involving the leasing by certified motor carriers of uncertified owner-operated equipment have been suits to hold liable the lessee of such equipment in a negligence action for personal injuries resulting from the use of such equipment.

One such case was *Brannaker v. Transamerican Freight Lines, Inc.*, 428 S.W.2d 524 (Mo.1968), where the Supreme Court of Missouri discussed the liability of the lessee, a certified motor carrier, for injuries suffered when equipment it leased, driven by the owner-operator/lessor, was instrumental in causing the injuries of the plaintiff. Sykes, the defendant motor carrier, claimed it was not liable since following a disagreement between Sykes and Murray, the owner-operator/lessor, Sykes had written Murray "canceling" the lease. Sykes did not notify any regulatory agencies of the cancellation, and the court stated it could not find as a matter of law that the lease had been canceled. Sykes did not pursue Murray or take other measures to get possession of the licenses in Sykes's name or the copy of the lease Murray was required to carry in his truck. Murray, like Wells, was not a certified carrier and could only operate under the authority of a certified carrier. Murray proceeded to make agreements with various other motor carriers to haul their loads, all the while doing so under Sykes's certificate of authority. Murray kept all the proceeds he earned, giving no monies to Sykes. The court, finding the lease still in effect, stated that "[a] finding . . . that the Sykes lease had not been terminated would permit the further finding that Sykes was entitled to a contractual share of the revenue from the subleases made by Murray for the use of the leased equipment and his services."

Bates for all purposes was the owner under the law of Wells's equipment during the term of the lease. The lease remained in effect during the entire time in question. Campbell violated the rules of the Interstate Commerce Commission and the Texas Department of Public Safety in not filing a lease between itself and Wells with the DPS. After fifty years in business as an interstate motor carrier, there can be no doubt that Campbell knew or should have known of its obligation under the law to use only the equipment of a certified motor carrier, either itself or another such carrier.

By omitting to do that which it was required to do under the law, Campbell damaged Bates. Bates would have charged Campbell $96,517.02 for the services of Wells's equipment during the time in question. Under the lease between Bates and Hawkins for that equipment, Bates was entitled to forty percent (40%), or $38,606.81. The court further finds that Bates is entitled to receive seven percent (7%) interest on that amount from July 11, 1974, the last date which this court finds the entire sum could have been due and owing to Bates from Campbell, to the date of judgment and nine percent (9%) thereafter until paid.

The evidence was insufficient to support a finding by this court that equipment other than Wells's equipment was used by Wells to haul for Campbell. Furthermore, the evidence does not support a finding that Campbell conspired with Hawkins to violate the Interstate Commerce Act or the Texas statutes. Thus, the court does not find that exemplary or punitive damages are justified.

On the question of attorneys fees, this court finds that Bates is entitled to reasonable attorneys fees as part of the costs of this suit under 49 U.S.C. § 8. The amount shall be determined according to the guidelines set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), at a hearing before this court on the 11th day of November, 1977, at 9:30 a. m.

Counsel for the plaintiffs shall prepare and submit to the court, after first affording counsel for the defendants the opportunity for inspection, an appropriate form of judgment to conform with these findings and conclusions.

The clerk shall record these findings of fact and conclusions of law and shall send a copy to counsel of record.